**STATE OF NEW YORK, Plaintiff, v METRO RESOURCES, INC., Defendant and Fourth-Party Plaintiff-Appellant, et al., Defendants and Fourth-Party Plaintiffs, et al., Defendants. TEXACO, INC., Fourth-Party Defendant-Respondent, et al., Fourth-Party Defendants. (And a Third-Party Action.) [788 NYS2d 697]—**

(And a Third-Party Action.) Kane, J. Appeal from an order of the Supreme Court (McNamara, J.), entered September 24, 2003 in Albany County, which, inter alia, granted the motion of fourth-party defendant Texaco, Inc. for summary judgment dismissing the fourth-party complaint.

In 1987, the Department of Environmental Conservation (hereinafter DEC) investigated petroleum discharges which occurred at adjacent gasoline stations, one of which was owned by defendant and fourth-party plaintiff Metro Resources, Inc. In 1999, plaintiff commenced this action, pursuant to Navigation Law article 12, alleging that Metro, among others, was strictly liable for costs that plaintiff incurred as a result of investigating and remediating the spill site. Metro commenced a fourth-party action against three parties, including Texaco, Inc., seeking indemnification and contribution, alleging that a 1976 petroleum discharge at a nearby service station—then owned and operated by Texaco—contributed to the contamination at the spill site. Texaco moved for summary judgment dismissing the fourth-party complaint. Supreme Court granted the motion, finding that Texaco made a prima facie showing that petroleum from its site did not cause or contribute to the contamination at the spill site and Metro failed to raise a triable issue of material fact in that regard. Metro appeals.

Supreme Court erred in granting Texaco's motion for summary judgment because questions of fact exist regarding whether Texaco contributed to the contamination on Metro's property. It is undisputed that a major petroleum discharge occurred on Texaco's property in 1976. A former Texaco employee who oversaw the cleanup efforts after that discharge testified at an examination before trial that the leaking tanks were removed quickly, a large amount of gasoline-contaminated soil was removed at the same time and several test wells were installed to continue monitoring the soil conditions. According to that

testimony, soil samples were periodically tested by an independent laboratory and were found to be free of contamination, groundwater samples were also free of petroleum product, and the county fire marshall's office—the office responsible for overseeing remediation projects at the time—approved every step of the cleanup. Texaco produced no records demonstrating the extent of the soil removal or the results of any soil testing. While the witness speculated that this was due to document-retention policies, no proof was presented regarding the terms of such policies or Texaco's compliance with them. Documents supplied by the fire marshall's office support the employee's general time line, but they mention only one test well, do not mention removal of contaminated soil and indicate that explosive levels of petroleum vapors were located in the test well after the 1976 spill. This information contradicts, or at least calls into question, the Texaco employee's testimony.

Deposition testimony of DEC's project manager for the investigation and remediation project at the spill site noted that a negligible amount of residual contamination was detected at Texaco's former property, although DEC determined that the amount was insignificant and did not affect the remediation plan for the spill site. Despite this testimony, there was proof that petroleum was found in a test well upgradient of Metro's property in a place where, according to Metro's expert geologist, groundwater and its contaminants would naturally have flowed from Texaco's property toward Metro's. After the remediation, that test well was clean, indicating that the remediation of Metro's property cleaned up contamination presumably coming from Texaco's property. Although Texaco speculates that such contamination could have been caused by later owners of the property, there is no proof of any later discharges and speculation is insufficient to resolve questions of fact (*see Hilltop Nyack Corp. v TRMI Holdings*, 272 AD2d 521, 523 [2000]; *Prato v Vigliotta*, 253 AD2d 749, 750 [1998]).

An owner's claim for reimbursement under Navigation Law § 181 (5) requires proof that the other party "actually caused or contributed to the discharge" to establish liability (*White v Long*, 229 AD2d 178, 181 [1997]; *see Popolizio v City of Schenectady*, 269 AD2d 670, 671 [2000]). The submissions here leave unanswered questions of fact as to whether Texaco's 1976 discharge did cause or contribute to the contamination on Metro's property, requiring denial of the summary judgment motion (*see Hilltop Nyack Corp. v TRMI Holdings, supra* at 523-524).

Mercure, J.P., Crew III, Spain and Rose, JJ., concur. Ordered that the order is modified, on the law, with costs, by reversing

so much thereof as granted the motion of fourth-party defendant Texaco, Inc. for summary judgment; motion denied; and, as so modified, affirmed.